IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 26-30438 |
| | ) | (Chapter 11) |
| JADE PRESENTS, LLC | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | Case No. 26-30439 |
| In re: | ) | (Chapter 11) |
| | ) | |
| TICKETS300, LLC | ) | |
| | ) | |
| Debtor | ) | |
| _____ | ) | |

## MOTION FOR JOINT ADMINISTRATION

Come now Jade Presents, LLC ("Jade Presents") and Tickets300, LLC ("T300") (collectively, the "Debtors," with each a "Debtor"), by and through undersigned proposed counsel, pursuant to Federal Rule of Bankruptcy Procedure 1015, and move this Honorable Court to jointly administer the three above-captioned proceedings, and in support thereof state as follows:

### I.      Introduction

For more than three decades, Jade Nielsen has brought live entertainment to the Upper Midwest—growing what started as a side pursuit booking touring acts into the largest concert and event promoter in the region. On January 11, 2007, Mr. Nielsen formalized that enterprise as Jade Presents, LLC and under that banner he brought national touring artists, festivals, and community events to venues across North Dakota and Minnesota. Roughly two years later, on September 14, 2009, recognizing that promoting live events and selling admission to them were two halves of a single enterprise, Mr. Nielsen organized T300 to serve as the dedicated ticketing arm for Jade Presents' shows. The two companies have operated hand-in-glove ever since—sharing common

1

ownership, a single downtown Fargo office, and an intertwined book of business in which the tickets sold by the one are the very events produced by the other.

For reasons that a first day motion is an ill-suited forum to properly rehash—rising production costs, the shifting economics of touring, and the headwinds that have buffeted live entertainment in the years since the pandemic—both Debtors have now sought the protections of this Honorable Court. There is an abiding hope that an orderly, court-supervised process will allow the Debtors to address their obligations—not least the claims of the many patrons holding tickets to events that cannot go forward—in a manner that treats creditors fairly and preserves the value available for distribution.

The interrelationship between these two Debtors is not incidental; it is the very architecture of the businesses. The Debtors share a single principal, operate from the same premises, and carry a substantially overlapping body of creditors—foremost among them the ticketholders whose funds pass through T300 in payment for Jade Presents productions. It is no coincidence that both entities sought relief on the same date, in the same court. So, it appears eminently sensible, as these Debtors enter the process of chapter 11, and to spare the estates and this Honorable Court the needless duplication of separate dockets, hearings, and notices, for the cases to be jointly administered.

## II.     Standard

The Federal Rules of Bankruptcy Procedure openly contemplate the joint administration of affiliates' bankruptcy estates, permitting, *inter alia*:

> If a joint petition or two or more petitions are pending in the same court by or against … (4) a debtor and an affiliate, the court may order a joint administration of the estates. Prior to entering an order the court shall give consideration to protecting creditors of different estates against potential conflicts of interest.

Fed. R. Bankr. P. 1015(b).

2

### III.    Argument: Joint Administration is Appropriate

While the Debtors do not instantly seek an order of substantive consolidation (though they certainly reserve their right to seek such relief at a later date), it is immediately apparent that the factual and legal issues in these two cases will furnish significant overlap. The Debtors are two operating halves of a single live-entertainment enterprise—Jade Presents producing the events, and T300 selling admission to them. The question that will drive both cases are, in consequence, the very same: how the claims of patrons and ticketholders are to be treated, how outstanding refund and chargeback obligations are to be resolved, and what is to become of the events left unstaged. None of these can sensibly be addressed in the one case without regard to the other.

Joint administration has been previously afforded where multiple debtors are "related" entities that are "controlled" by a common individual. *In re Texas Health Enterprises, Inc.*, 246 B.R. 832, 833 (Bankr. E.D. Tex. 2000). *See also*, *In re City Homes III LLC*, 564 B.R. 827, 829 (Bankr. D. Md. 2017) ("The other Debtors were described as 'affiliates' with 'common ownership through CHI' and because of this interconnectedness, the Joint Administration Motion was granted on September 12, 2013 and the cases have since been collectively administered through the portal of City Homes III's Docket."). This reality is buttressed by title 11 of the United States Code (the "Bankruptcy Code") defining "affiliate" so as to include entities that are "directly or indirectly own[ed], control[led], or h[eld] with power to vote" by a single entity. 11 U.S.C. § 101(2)(B). The provisions of Federal Rule of Bankruptcy Procedure 1015, in turn, permit the joint administration of affiliates' bankruptcy estates.

Here, both Debtors are wholly owned and controlled, directly or indirectly, by Jade Nielsen, and they function as a single concern in every practical respect. They have shared one Fargo office, common management and staff (most of whom have since been separated), and the

same vendors and payment-processing relationship since 2009; they have worked with the same venues and the same roster of touring artists and agents; and the composition of their creditor bases, secured and unsecured, is substantially—albeit not entirely—overlapping. At core, each depended on the same continuous flow of advance ticket revenue to fund the production of live events, so that when those events could no longer be staged, the failure of one half of the enterprise was, of necessity, the failure of another.

To be sure, it is not merely that the Debtors qualify for joint administration. It is, too, that to administer these cases separately would be to invite unnecessary duplication of myriad efforts, leading to the incursion of unnecessary legal fees and risking the waste of judicial resources. Judicial economy well favors the joint administration of their three cases.

## IV.     Conclusion

WHEREFORE, the Debtors respectfully pray this Honorable Court (i) jointly administer, but not substantively consolidate, these two cases; (ii) designate the matter of *Jade Presents, LLC* as the lead case, in which all filings—excepting proofs of claim—shall be docketed; (iii) direct each Debtor to continue to maintain a separate claims register; and (iv) afford such other and further relief.

Respectfully Submitted,

Dated: June 7, 2026                    By:     /s/ Maurice B. VerStandig
                                               Maurice B. VerStandig, Esq.
                                               The Dakota Bankruptcy Firm
                                               1630 1st Avenue N
                                               Suite B PMB 24
                                               Fargo, North Dakota 58102-4246
                                               Phone: (701) 394-3215
                                               mac@dakotabankruptcy.com
                                               *Proposed Counsel for the Debtors*

4

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 7th day of June, 2026, a copy of the foregoing was served electronically upon filing via the ECF system.

<u>/s/ Maurice B. VerStandig</u>
Maurice B. VerStandig