IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 26-30438 |
| | ) | (Chapter 11) |
| JADE PRESENTS, LLC | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | Case No. 26-30439 |
| In re: | ) | (Chapter 11) |
| | ) | |
| TICKETS300, LLC | ) | (Joint Administration |
| | ) | Motion Pending) |
| Debtor | ) | |
| | ) | |

**FIRST DAY MOTION TO ESTABLISH NOTICE AND CLAIM PROTOCOLS**

Come now Jade Presents, LLC ("Jade Presents") and Tickets300, LLC ("T300") (collectively, the "Debtors" and each a "Debtor"), by and through undersigned proposed counsel, pursuant to section 105 of title 11 of the United States Code, Federal Rule of Bankruptcy Procedure 2002(l), and Federal Rule of Bankruptcy Procedure 3001(a), and move to establish notice and claim protocols for the duration of the two above-captioned bankruptcy cases, and in support thereof state as follows:

I.     **Introduction**

Several thousand individuals are currently holding tickets for concerts, comedy shows, and various stage acts—promoted by Jade Presents—that are scheduled for performance in North Dakota, Minnesota and Wisconsin over the coming months. All of those tickets were originally issued through a somewhat-complex mechanism involving the services of T300. And while much of the purpose of these two bankruptcy cases is to preserve as many of those events as possible, for the benefit of the consumer public and myriad public/private industry partners, the Debtors are

1

also aware that some performances have already been cancelled and others may befall a similar fate.

While it is sincerely hoped the scope and extent of those cancellations can be minimized through efforts to assume and assign performance contracts in these cases, the Debtors also acknowledge that ticketholders may ultimately have claims to assert against one or both estates. Facilitating the processing of such claims, however, will require establishing (i) a mechanism for efficiently giving notice to the public of the pendency of these cases; and (ii) a protocol for efficiently receiving claims.

The use of traditional mail-based notice is not pragmatic for various reasons, not the least of which being that the Debtors do not have postal addresses for the overwhelming majority of ticket purchasers. The cost of mailing would also be prohibitive, especially when multiplied across the numerous docketing occurances for which notice to all parties in interest is contemplated by governing law. And, while the Debtors may ultimately dispute the standing of any secondhand ticketholders to assert direct claims against the two estates, given the lack of privity, there is nonetheless an abiding understanding that even secondhand ticketholders certainly should be given notice of these cases and an opportunity to assert claims to the extent they so wish.

Equally, the use of a traditional claims register is impractical. Portions of Official Form 410 are facially inapplicable to ticketholders asserting correlative claims ("Ticket Claims"). The existence of two cases, for which joint administration is being sought, may also have a tendency to confuse holders of Ticket Claims. And there is, too, an abiding concern that receipt of a high volume of Ticket Claims may work a procedural injustice on the Clerk of this Honorable Court.

With this background, the Debtors ask this Honorable Court to alter both the notice and claims protocols for these cases. For want of ambiguity, however, the alterations sought herein are

solely applicable to the giving of notice to ticketholders and the processing of Ticket Claims. The Debtors do *not* seek to alter the status quo obligations owed to "traditional" creditors whose contact information is imprinted on the matrices of these two cases. For those parties, US Mail-based notice is feasible and appropriate, just as utilization of Official Form 410—through submission to the Clerk of this Honorable Court—is also feasible and appropriate.

## II.        Argument: Notice Protocols Should be Established

The schedules filed in both of these cases list "Unknown Ticket Holders" as an unsecured creditor devoid of an accompanying mailing address. As is evident from the titular designation, this is neither a singular creditor nor a collective of creditors whose identifies are fully known or readily ascertainable. Yet these individuals ought to be given notice of these proceedings in a manner well calculated to optimize the likelihood of that notice actually being received.

Governing rules permit, *inter alia*, "[t]he court may order notice by publication if notice by mail is impracticable or if it is desirable to supplement the notice." Fed. R. Bankr. P. 2002(l). The Supreme Court has noted—in the context of a probate matter—that "[f]or creditors who are not 'reasonably ascertainable,' publication notice can suffice. Nor is everyone who may conceivably have a claim properly considered a creditor entitled to actual notice." *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 490 (1988). The Eighth Circuit, in turn, has applied this standard to chapter 11 bankruptcy cases: "After a reasonably diligent search for known creditors, publication notice generally suffices for unknown creditors." *Dahlin v. Lyondell Chem. Co.*, 881 F.3d 599, 606 (8th Cir. 2018) (citing *Tulsa Prof'l*, 485 U.S. at 490).

In assessing which creditors are "known" and which creditors are "unknown," the key inquiry is derivative of "the debtor's own books and records. Efforts beyond a careful examination of these documents are generally not required. Only those claimants who are identifiable through

3

a diligent search are 'reasonably ascertainable' and hence 'known' creditors." *Chemetron Corp. v. Jones*, 72 F.3d 341, 347 (3d Cir. 1995). *See also Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 317 (1950) ("Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights.") (citing *Cunnius v. Reading Sch. Dist.*, 198 U.S. 458 (1905); *Blinn v. Nelson*, 222 U.S. 1 (1911); *Jacob v. Roberts*, 223 U.S. 261 (1912)).

Here, one or both of the Debtors have an e-mail list thought to contain information for most—if not all—persons who directly purchased tickets for forthcoming impacted shows. The e-mail list likely does *not* contain information for persons who then bought tickets on the secondary market (unless those persons happen to have also purchased separate tickets directly). But the e-mail list is believed to be both robust and accurate, insofar as the list is derivative of addresses used to deliver tickets in the first instance.[1]

The Debtors also know that the overwhelming majority of Ticket Claims are likely to correlate to shows planned for the Fargo/Moorhead area, which has been the historic center of Jade Presents' operations. While scheduled performances do include shows as far west as Bismarck and as far east as Wisconsin, such are geographic outliers. And, at least within the Fargo/Moorhead community, it is reasonably anticipated these cases are likely to produce a healthy quotient of press attention.

---

[1] Somewhat sadly for those of us who grew up compiling scrapbooks laced with reminders of the musical acts we were fortunate enough to view as angsty teenagers in search of acoustic salvation, the era of the physical ticket stub has largely given way to an age of digital tickets less susceptible to copying, forgery, and falling victim to imprecise tears along poorly-perforated lines.

So the Debtors propose, for purposes of giving notice to holders of Ticket Claims, that (i) the notice attached hereto as Exhibit A, alongside the proof of claim form discussed *infra*, be sent to all persons on the aforementioned e-mail list; (ii) the Debtors be authorized to point the domain jadepresentsbankruptcy.com to a free docket-mirroring website containing links to all non-sealed and unrestricted docket entries in the Jade Presents bankruptcy case (https://www.courtlistener.com/docket/73450583/jade-presents-llc/); and (iii) the Debtors and their proposed counsel take reasonable measures to interact with local media outlets interested in publicizing information about these cases, promoting—where possible—the proposed docket mirroring domain.

These are reasonable, economically affordable steps carefully calculated to maximize the giving of ongoing notice. The proposed initial e-mail communication and responsiveness to media inquiries will place individuals on notice of these cases. The ongoing use of a docket mirroring site, with a custom domain name, will ensure those interested in participating in these cases be able to do so through monitoring of pertinent activities. And, while no doubt imperfect, these steps do genuinely seem the best pragmatic solutions to the issue at hand, while handily satisfying the rigors established by the *Dahlin* and *Chemetron Corp.* Courts, as well as those enshrined in Rule 2002.

### III.    Argument: Claim Protocols Should be Established

While the concept of "mega" subchapter V cases may be somewhat novel (if not outright unprecedented), an economic reality necessarily attaches to the fairly *sui generis* construct: The Debtors do not have the funds requisite to hire a third party claims agent for purposes of managing these cases. At the same time, it is recognized that the traditional claims register could quickly balloon beyond a point of user-friendliness in these cases, as there may be thousands of Ticket

5

Claims ultimately filed, and an orderly process also needs to be established for purposes of disburdening the Clerk of this Honorable Court from inputting each such item into the claims registers of the two cases.

Title 11 of the United States Code (the "Bankruptcy Code") permits, *inter alia*, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Governing rules, in turn, contemplate that there may be some modification to Official Form 410, with claims needing to only "substantially conform" to the subject form. Fed. R. Bankr. P. 3001(a).

Attached hereto as Exhibit B is a proposed proof of claim form to be used for Ticket Claims. While "ordinary" claims can be processed using Official Form 410, and are not likely to be in a quantity that threatens an overburdened claims register, Ticket Claims equitably merit differentiated treatment for numerous reasons: (i) the uniformly unsecured nature of such claims results in much of Official Form 410 being superfluous; (ii) holders of Ticket Claims are overwhelmingly more likely to be laypersons who will benefit from a simplified claims process; (iii) additional information is needed to assess Ticket Claims (i.e., the shows for which tickets have been purchased, whether tickets were acquired directly or on the secondary market, the sums paid for tickets, etc.); and (iv) many Ticket Claims may prove moot if correlative shows are able to go on as originally planned (or in a manner as close thereto as pragmatically possible).

Critically, the Debtors are *not* asking that Official Form 410 be disregarded in these cases or that creditors not be permitted to use Official Form 410. Anyone who wishes to do so ought to be permitted to do so. The Debtors are, rather, urging that a simplified and streamlined form— derivative of Official Form 410—be made available to potential holders of Ticket Claims, so as to ease and better facilitate the filing of such claims.

6

The Debtors also ask that their proposed counsel receive claims made on this modified form, via e-mail, and periodically inventory such claims and the substantive thereof, creating a database that may be used to supplement the official claims register. Proposed counsel will, from time to time, upload copies of *all* claims received, to the docket, for purposes of transparency (doing so in batch form, with claims being consolidated into a single PDF and attached to a miscellaneous filing), while using those occasions to also apprise this Honorable Court of the total number of Ticket Claims received to date and other data points believed to be reasonably necessary, informative, or helpful to the advancement of these cases.

As of present, there is a lack of clarity as to the extent, *vel non*, of any distributions that may be available to holders of Ticket Claims. One or more plans of liquidation will be filed in due course—should these cases remain in chapter 11—and will provide for appropriate creditor classifications and treatments. *See* 11 U.S.C. § 1123(a)(1). How best to handle Ticket Claims can and will be addressed through those plans. Similarly, should these cases ultimately convert to chapter 7, a new order for relief will issue, *see* 11 U.S.C. § 348(a), and the optimal means of addressing Ticket Claims can be then addressed. In the interim, however, there is some import in creating a mechanism for the efficient receipt of Ticket Claims—not merely for purposes of inventorying the obligations of the Debtors but, too, for purposes of ensuring members of the public understand these cases are designed to address their claims and are being conducted in a manner mindful of the wide reaching community impact likely to be occasioned through the early-summer bankruptcy filings of two companies in the concert business.

## IV.   Conclusion

WHEREFORE, the Debtors respectfully pray this Honorable Court (i) approve the noticing protocols proposed herein; (ii) direct the Debtors to send, to the e-mail list maintained by one or

both Debtors, the case notice attached hereto as Exhibit A and the proof of claim form attached hereto as Exhibit B (with missing date and trustee information being first inserted where appropriate); (iii) direct the Debtors to mirror the free public docket of the Jade Presents bankruptcy to http://www.jadepresentsbankruptcy.com; (iv) direct the Debtors to make a good faith effort to work with local media outlets to spread information about these cases; (v) approve the Ticket Claims protocols proposed herein; and (vi) afford such other and further relief as may be just and proper.

Respectfully Submitted,

Dated: June 7, 2026       By:    /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
The Dakota Bankruptcy Firm
1630 1st Avenue N
Suite B PMB 24
Fargo, North Dakota 58102-4246
Phone: (701) 394-3215
mac@dakotabankruptcy.com
*Proposed Counsel for the Debtor*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of June 2026, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig